Good morning. We're glad you got here safely. Our first order of business is to, Judge Stapleton and I would like to welcome the Honorable Alan Laurie today as a part of our panel. He is a U.S. Circuit Judge who normally sits in the United States Court of Appeals for helping us out. Thank you. Our first case today will be Lasko v. Watts. May I proceed? May it please the Court. I'm Jean Macidas from Jones Day, appointed counsel for Larry Lasko, the appellant here. And I would like to reserve two minutes for rebuttal. It's granted. This case is about a pro se prisoner who was seeking treatment for a serious and deadly disease, hepatitis C. Mr. Lasko, however, was not permitted to pursue his claims before a trier of fact because of a paradox in which he found himself. The trial court granted summary judgment in part because Mr. Lasko failed to present expert evidence. But the trial court had also previously denied a motion for counsel, counsel that would have helped Mr. Lasko to obtain the very evidence that he needed. But his right to counsel was only discretionary and the trial court found that he seemed to be well up on procedure and on the disease and he'd gotten all sorts of treatment and so what was the error? I believe the adjective was amazingly full and complete pleadings in all. That is correct, Your Honor. The trial court noted that Mr. Lasko had filed numerous pleadings and motions. But as this court has also noted in previous cases, that's not enough, that's not determinative to show that the plaintiff is capable of presenting his case at trial. There are six factors that the court was supposed to consider and this court focused primarily on the first based upon the fact that Mr. Lasko had in fact presented numerous pleadings and motions. Notably, none of his motions were successful. When he was presented with a motion for summary judgment, Mr. Lasko responded requesting counsel, discovery and an extension of time. None of those motions were granted and Mr. Lasko found himself unprepared to meet the evidential requirements of summary judgment. This case indicates a fundamental unfairness in the process below, the paradox that I mentioned. And under the cases in this circuit, Montgomery v. Pinchak and Parham v. Johnson, counsel should have been appointed for Mr. Lasko. The case is largely controlled by those two cases. As for discovery, the rule 56 discovery, the language of the rule itself presupposes that summary judgment would not be granted unless there were an adequate record. Well, I don't think there's an absolute right if discovery hasn't been, I mean, isn't that discretionary in the trial judge's discretion to continue a motion for summary judgment? Yes, it is discretionary, but it was premature to grant summary judgment here where Mr. Lasko was not able to obtain records that he needed. He never obtained his complete medical records and he also needed discovery on critical elements of his claims here. Deliberate indifference is a complex legal issue with issues of proof that Mr. Lasko was not prepared to meet at summary judgment without discovery and without counsel. Defendants have not explained the numerous delays that Mr. Lasko endured over the course of the 18 months that he sought treatment. Mr. Lasko was denied the opportunity for discovery. Could I hold you up for one minute? On the discovery issue, now, the complaint was filed and the district judge entered an order granting, was it, six months' worth of discovery? There is a standard order that the trial court issued as a matter of course for pro se prison litigation saying that there is a six-month period for discovery to take place. Right. Unfortunately, after Mr. Lasko filed his complaint, it took four to five months before defendants were served because he went through the procedure to request informed apocryphal. Now, but isn't the reference point, though, the date of his last pleading, which would be the complaint? It would be. And under normal circumstances, six months might be a reasonable time. But a pro se prison litigant here reasonably waited for defendants' answer, which never came. Defendants requested numerous extensions of time to answer and which were granted and then never did answer. And when did his first discovery request come out? It was after that six-month period, right? The first discovery request was submitted to the court for permission to obtain discovery after Mr. Lasko received the motion for summary judgment, the briefing. It was filed within four weeks of receiving that brief from the defendants. But more than six months after the complaint was filed. That is correct. Okay. Okay. So Mr. Lasko was clearly deserving counsel under the standard of this circuit, under Montgomery and Parham, because he met all six of the factors that were to be considered under Tabron. It was still discretionary, though, wasn't it? Absolutely discretionary. But under Montgomery and under Parham, those cases held that when most of the Tabron factors are met, the trial court should give serious consideration to the appointment of counsel. And it was error not to apply all the factors in this case. So we would ask that this court can remedy this fundamental injustice by vacating and remanding for appointment of counsel and to allow at least limited discovery. Well, now, he did submit some rather extensive documentation, didn't he? I mean, he had, I don't think it, I think you can see that he had, I guess, almost his entire medical record. I mean, he. Mr. Lasko had submitted. He's pretty able, according to some of these records, right? Mr. Lasko, yes, Mr. Lasko submitted the documents that were in his possession that he had been able to obtain. So those included medical records up to a certain point, as well as his own administrative grievances that he had filed over the course of time. Thank you. Thank you. Thank you very much. May it please the Court. Thank you. Attorney Mosaitis. Even if we would assume that Mr. Lasko's claims had arguable merit in fact and law, the district court did not use its discretion here because the only factor weighing in favor for appointment of counsel was the need for expert testimony. As the court just mentioned, all of his pleadings, or excuse me, not all of his pleadings, all of his obligations, filing obligations were already met. And as the district court found, the record, the filing below it, was amazingly complete and full of examples. Isn't the lack of expert medical testimony important? It is. And he couldn't readily get that when he was in prison. But as this court has recognized in the past, if we were to appoint counsel, or if a court were to require appointment of counsel in cases where primarily the only requirement was, or the only factor met was the need for expert testimony, there would be an overwhelmingly number of motions filed for the same. In other words, it would be a sort of mandatory right to counsel. Yeah. And here, in the middle district of Pennsylvania, I'm sure you're aware, we have the largest inmate population in the country. And the courts are already inundated with pro se filings. But you're assuming that there is arguable merit to the case. I'm assuming there's arguable merit. But as I will express later, I don't believe there is. But assuming there is, the other Tavron factors just weren't met. The ability to present his case, he showed, based on his filings, that he could do that. He was literate. He understood English. It was obvious from his many filings with the court that he had access to typewriters, legal materials, copy machines. And when considering the complexity of the matter, the district court acknowledged that, hey, yeah, the treatment and care of hepatitis C is a complex matter. However, based on his filings, he cites excerpts to medical textbooks and journals. And his exhibit number 48, which I'm going to talk about a lot here, it's called Acts of Omissions. It was one of 75 exhibits attached to his brief in opposition to our motion for summary judgment. In other words, he knew a lot about the disease. Oh, he knew a ton. And that was apparent to the court. Without a doubt. And this exhibit number 48, it was a 27-page, single-spaced, 180-paragraph document, giving a full account of the treatment he received, when he received it. It tried to also discuss the BOP guidelines, and it tried to show how we failed to follow our recommendations with respect to the BOP guidelines and so forth. So he did understand. Although it was complex, he showed a good understanding of it. The key factor here, I think, the difference between Montgomery and why Montgomery is distinguishable, is here there was no key outstanding discovery. There was no discovery solely within the hands of the moving party. In Montgomery, if you recall, they lost this inmate's medical records. And they lost it for a period of nine or ten months. Now, he had an HIV condition and a heart condition. And the prison was undergoing, they changed their contracts with the medical provider. And that's how they lost the medical records. But they were giving him, and they acknowledged they had given him medications, several different medications for both his HIV condition and his heart condition. He was also scheduled for laboratory work and blood work and a heart catheterization. It was scheduled, I believe, in May. Ten months went by. He didn't receive any of this. The prison acknowledged, as did the private contractor, we lost the documents. Now, when he tried to get those documents through discovery, the parties, both the private party and the governmental party, they objected. And every step of the way, they tried to impede his ability to get those documents. And the court sustained those objections based on Mr. Montgomery's failure to comply with the complex discovery rules. That's not the case here. We asked for a stay. The court granted the stay. But if you look at what he requested, he had them. The medical records, all he had to do was fill out a form supplied by the BOP, hand it to them, and he got the medical records. And in my brief, I cite each and every time he did that, he had them all. Why he requested it? I think that your adversary claims that he didn't have all the medical records. Is that true? I think it was up until August of 2006 he had them all. That was the last I recall. Treatment stopped in October of 2006. The BOP guidelines. Now, these requests were made in July and August of 2007. He had the BOP guidelines as of April 11th, 2005. It's in the record, and it's in that acts of omissions, paragraph 45. Again, why he asked for them? Maybe it was an attempt to stall the case. I don't know. His discovery was filed three months after the discovery deadline. But he didn't have an answer. Didn't he move for discovery as soon as he got something from you, from your client, indicating what your client's position was? You didn't file an answer. Correct. Okay. And you finally did file a summary judgment brief, and he came forward with discovery after he was able to find out. A month later, he did. And the reasons he said he needed it was for personal involvement. Now, the medical records are signed, they're stamped, and they're dated. And he needed to respond to one of our arguments on a motion for summary judgment. Again, I think it was disingenuous because he had everything he needed to show personal involvement. If you look at that Exhibit 48, the acts and omissions, the 180-paragraph document, he tells us exactly who provided treatment and when they provided it. So he did not need the record. And so unlike Montgomery here, he doesn't need help in getting the records. Where in Montgomery, the court found counsel can assist him in either recreating the lost medical records, obtaining the lost medical records, or assisting him in getting past the discovery rules. And again, expert testimony is necessary in all personal injury actions unless the causal connection is obvious. Not just in medical malpractice actions, not just in the deliberate indifference actions. Unless somebody trips and falls and breaks a leg and the causal connection is obvious, it's required. You say he showed that he was able to represent himself, factor number one. Yes. But you do acknowledge that this kind of case is a difficult and complex issue case. I agree. Okay. And the third is need for investigation. Now, surely there was a need for investigation here. As to an explanation for these delays, 18 months between a showing of need and the providing of the first treatment that is specified as standard in the Bureau of Prisons manual. And what was it, six months or ten months after the gastroenterologist had said, he needs this? Well, I don't think he needs a factual investigation as far as discovery because I think he has what he needs and he has the medical records speak for themselves. As far as an investigation by an expert to look into it, expert testimony was necessary. Okay. Capacity to retain, that cuts in his favor. He could not retain counsel. Right. He attempted to, I believe. Extent to which the case is likely to turn on credibility. I think that's with all cases. I don't see how that favors one or the other in this instance. In a retaliation case? Well, the retaliation claim, I mean, if you want me to address that, I will. The retaliation claim. Well, yes, please do. He received treatment. He first filed a lawsuit in May of 2005. In August of 2005, we approved treatment. That cuts against this whole theory that we wouldn't give him treatment because he filed a lawsuit. We then again, after he was notified, we gave him treatment again. So I think that has very little merit. Now, even if we were to, excuse me, I'm sorry. You conceded to Judge Stapleton that this is a difficult case. Are you saying that dealing with Hepatitis C is a difficult case or this case on its facts is a difficult case? What I'm saying, I'm not saying this case is, I'm sorry, excuse me. Medical malpractice cases are complex matters is what I'm saying. And, you know, I'm not going to sit here and say they're not. That's what I do primarily. As far as this case, he understood. I mean, he had the guidelines. He understood it. What he was lacking was expert testimony. There's no doubt about it. But as I will explain, I don't think he has arguable merit because he cannot show injury. He cannot prove his First Amendment claim of retaliation, his Eighth Amendment claim of deliberate indifference, or his medical malpractice claim because he does not have an injury. In other words, he had the disease. He got all sorts of treatment. He didn't follow the prescriptions. And so you're saying on these facts. No, he followed the treatment, what he was supposed to get. But what happened is, if you recall, both the BOP guidelines and Dr. Peters, the private gastroenterologist, suggested trying him on this treatment, the requested treatment, for a period of three months. They tried him on it for four months, between June and October of 2006. At that time, according to the BOP guidelines and Dr. Peters, a private party, nothing to do, he was following this case at the request of the BOP, they suggested trying him for three months. If the viral loads did not decrease, then the treatment was ineffective and discontinued. That's what happened. Treatment was ineffective. He cannot prove an injury with the treatment not working because it wouldn't have mattered whether he got the treatment six months earlier, 12 months earlier, or the very day he arrived at FCI Schoolkill. Wait a minute. He's no better, no worse. You're telling me that somebody, and I'm assuming the facts most in his favor, that he shows up and he says, I've got this hepatitis C, and my liver is deteriorating, and I need treatment, et cetera. And he is there for 18 months saying, oh, my God, my liver is disintegrating, and nobody will even pay any attention to me. I'm glad you brought it up. You go through that, and that's not injury? Well, first of all, I think, and I explained in my brief, he received treatment all along. Treatment encompasses many things, including screening, laboratory tests, all this. It's not just medication. That's what he was requesting, the medication that he had got on the outside on at least three separate occasions. Which was the treatment that was specified in the Bureau of Prisons manual for his condition. Yes, it was. But here's the key to answer your question. The BOP guidelines in the joint appendix at 143 say the degree of viremia, viral load, and the HCV, which is the hepatitis C virus genotype, do not affect the progression of the liver disease. Now, you don't have to take that from the BOP guideline. In October of 2005, the very first time he underwent treatment, while he was undergoing treatment, he sent his medical records, his liver biopsy, and some laboratory work to the Guthrie Clinic. The Guthrie Clinic is the very clinic that treated him, or I should say, attempted to treat him at least three times on the outside, but they had to discontinue because he was noncompliant with it. In response to his letter, the Guthrie Clinic says, the level of virus does not mean your liver disease is getting worse. The viral level really has no effect on liver damage. Which, again, his whole theory is based upon, I needed this medication because my viral load was out of control. This decreases my viral load. I am suffering, and continue to suffer, and will suffer in the future, liver damage. It has nothing to do with the progression of the disease. And that comes from an outside source. So your position is, this is all just about a disagreement about how we ought to be treated by the medical personnel. Exactly. Exactly. But didn't the trial court find that it cannot be disputed that Lasko's refusal to cooperate with treatment protocols initially led to the discontinuation of treatment? It did. And I believe that was with respect to the retaliation claim and the deliberate indifference claim. He refused treatment. He didn't refuse treatment. I shouldn't say that. What he refused was to be followed by Dr. Hendershot because he claimed Dr. Hendershot would have it out for him because he filed a lawsuit months earlier against him. Can we go back for a minute to, Judge Stapleton asked you, I thought rather directly, about the complexity of legal issues prong, and I thought you answered pretty directly. Then Judge Lurie asked you a similar question and you seemed to not say yes. What is your position as to complexity of legal issues? It seems that you said, yes, generally these are complex, but in this case they're not complex. Could you state your position? Medical malpractice cases are anything to do with medical problems. Remember, we're applying the test, so let's apply the test. Yes. It is a complex matter. And the court acknowledged it was a complex matter, and I agree with that. It is a complex matter. But here he seems to be well... How did the court put it? He's well-educated to his medical conditions and treatment. And I think all you need to do is look at... But does that go to the ability to present his case, though? Yes, I think it goes to the complexity of the matter also because he appeared to understand what was going on. So to sum up, I believe this case is different from Montgomery in that the only factor here weighing in favor of appointment of counsel was the need for expert testimony. And even if we assume that for purposes of argument that the district court abused its discretion in denying appointment of counsel, this case is not worthy of remand because he has not suffered injury. The very premise upon which he bases this case is not only without merit, it is unfounded. Thank you. Thank you, counsel. I'm sorry, did you have something? No. Thank you, counsel. Thank you. Thank you, Your Honor. As defendants have conceded, Mr. Lasko's case meets at least four out of the six Tabron factors. They've conceded the complexity of the legal issue, his incapacity to retain counsel, the importance of credibility issues to matters of deliberate indifference and retaliation, as well as the factor that weighs most heavily is the need for expert testimony. Now, just so we can be clear, I don't think it's a sort of majority wins, isn't it? We just consider all the factors, or the district court ought to consider all the factors and then make a determination? Yes and no, Your Honor. The district court should consider all the factors, but the prior cases, Montgomery and Parham, have said that when most of the Tabron factors are met, that the trial court should seriously consider the appointment of counsel. And I would point out that the Middle District has a pro bono fund to reimburse volunteer attorneys and that the federal bar in the Middle District has a panel of volunteer attorneys that are assembled for civil litigants. And can I make one more point? As far as no key discovery outstanding, I just would reemphasize that he did not have all of his medical records and he was not able to obtain state of mind, which is an important prong in both retaliation and deliberate indifference claims. So there was key discovery outstanding. What do you say to your friend across the way who says, well, this is a nothing case for one reason and one reason only, and that is the record demonstrates that there is no injury, so he couldn't recover on any of the claims he has made. What do you say to that? Two things, Your Honor. One is that the record is incomplete. It's inadequate at this point to draw that conclusion. And two, that expert evaluation of the record when it is complete would enable us to respond to that more fully. Anything else? Anything else? Thank you, Counsel. Thank you. Thank you, Counsel, for a well-briefed and well-argued case, and thank you, Counsel, for taking the case on pro bono. Thank you.